Brian S. King, #4610
Brent J. Newton, #6950
Samuel M. Hall, #16066
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
samuel@briansking.com

Attorneys for Plaintiff

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| J.M., individually and on behalf of N.M. a minor,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED HEALTHCARE INSURANCE COMPANY, UNITED BEHAVIORAL HEALTH, TRINET HR III, INC., and the TRINET HR III, INC. WELFARE BENEFIT PLAN,<br><br>Defendants. | COMPLAINT<br><br>Case No. 2:23-cv-447 |

Plaintiff J.M., individually and on behalf of N.M. a minor, through his undersigned counsel, complains and alleges against Defendants United Healthcare Insurance Company, United Behavioral Health (collectively "United"), TriNet HR III, Inc. (the "Plan Admin") and the TriNet HR III, Inc. Welfare Benefit Plan ("the Plan") as follows:

//

//

1

**PARTIES, JURISDICTION AND VENUE**

1. J.M. and N.M. are natural persons residing in Tarrant County, Texas. J.M. is N.M.'s father.

2. United Healthcare Insurance Company is headquartered in Hennepin County, Minnesota and was the insurer and claims administrator, as well as the fiduciary under ERISA for the Plan during the treatment at issue in this case. United Behavioral Health is the mental health arm of United Healthcare Insurance Company.

3. At all relevant times United acted as agent for the Plan and the Plan Admin.

4. The Plan Admin is the designated administrator for the Plan.

5. The Plan is a fully insured employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). J.M. was a participant in the Plan and N.M. was a beneficiary of the Plan at all relevant times. J.M. and N.M. continue to be participants and beneficiaries of the Plan.

6. N.M. received medical care and treatment at Eva Carlston Academy ("ECA") beginning on July 2, 2021. ECA is a licensed treatment facility located in Salt Lake County Utah, which provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

7. United denied claims for payment of N.M.'s medical expenses in connection with her treatment at ECA.

8. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

9. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions because United does

business in Utah, has a large claims processing facility in Salt Lake City where the appeals and claims in this case were processed, and the treatment at issue took place in Utah.

10. Also, the Plaintiff has been informed and reasonably believes that litigating the case outside of Utah will likely lead to substantially increased litigation costs he will be responsible to pay and that would not be incurred if venue of the case remains in Utah. Finally, in light of the sensitive nature of the medical treatment at issue, it is the Plaintiff's desire that the case be resolved in the State of Utah where it is more likely both his and N.M.'s privacy will be preserved.

11. The remedies the Plaintiff seeks under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), for an award of statutory damages against the Plan Admin pursuant to 29 U.S.C. §1132(c) based on the failure of the Plan Admin and its agents to produce within 30 days documents under which the Plan was established or operated, an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

## BACKGROUND FACTS

12. N.M. was admitted to ECA on July 2, 2021, due to issues which included self-harming, high risk behaviors such as engaging in sexually explicit conversations with strangers, eating disorders, body dysmorphia, depression, alcohol use, school refusal, anxiety, panic attacks, compulsive behaviors, low self-worth, trauma from sexual assault, difficulty managing her anger, and multiple suicide attempts.

13. In a letter dated July 8, 2021, United denied payment for N.M.'s treatment. The reviewer offered the following justification for the denial:

    > I have reviewed your treatment plan that was submitted by Eva Carlston Academy, and I have determined that coverage is not available under your benefit plan for the requested services of Residential.
    >
    > Authorization unavailable for Substance Abuse Residential Level of Care due to Service Components Do Not Match Substance Abuse Residential as outlined in American Society of Addiction Medicine (ASAM) Level 3.5 or 3.7 Criteria.

14. On December 28, 2021, J.M. submitted a level one appeal of the denial of payment for N.M.'s treatment. J.M. wrote that when N.M. was admitted to ECA, a representative attempted to contact United to request preauthorization, but was told that ECA had been flagged for automatic denial of payment as the services provided there were "experiential in nature."

15. J.M. reminded United that he was entitled to certain protections under ERISA during the review process, including a full, fair, and thorough review conducted by appropriately qualified reviewers whose identities were clearly disclosed, which took into account all of the information he provided, and which gave him the specific reasons for the adverse determination, referenced the specific plan provisions on which the denial was based, and which gave him the information necessary to perfect the claim.

16. He asked that the reviewer be trained in the details of MHPAEA and that they be knowledgeable about generally accepted standards and clinical best practices for residential programs in the State of Utah.

17. He argued that ECA met the Plan's requirements for residential treatment care and that it was a duly licensed residential program which provided clinically appropriate twenty-

four hour care. He wrote that ECA also provided its services in accordance with generally accepted standards of medical practice.

18. J.M. argued that it was inappropriate for United to rely on criteria for substance abuse to evaluate N.M.'s treatment as, although she did have some alcohol use issues in the past, this was not the primary reason she was admitted to residential treatment care. J.M. argued that when the proper criteria were utilized, N.M.'s treatment at ECA met all the requirements for approval.

19. J.M. expressed concern that because N.M.'s treatment met all the listed requirements in his governing plan documents and also those listed in United's CASII criteria, that United was actually relying on undisclosed internal policies to deny payment. J.M. alleged that United had flagged ECA for automatic denial regardless of the medical necessity of the treatment or the language of any applicable insurance policies.

20. J.M. included a list of the facilities of which he was aware which were flagged for automatic denial regardless of the licensing of the facility.

21. J.M. contended that the denial of payment also violated MHPAEA. He wrote that MHPAEA compelled insurers to ensure benefits for behavioral health services were offered at parity with benefits for medical or surgical services in the same classification. He identified skilled nursing, subacute rehabilitation, and inpatient hospice facilities as some of the medical or surgical analogues to the treatment N.M. received.

22. J.M. identified two violations of MHPAEA in particular. The first was United's flagging of ECA for automatic denial regardless of the actual plan language. J.M. alleged that United did not do this for analogous medical or surgical facilities and asked that in the

event he was mistaken that United provide him evidence that it flagged analogous licensed medical or surgical facilities as "unavailable for authorization."

23. The second way J.M. alleged that United violated MHPAEA was by ignoring language that the members' specific plan contract superseded any internal policies and guidelines. J.M. wrote that while United's stated policy was that governing plan documents superseded any other criteria, in practice this was not the case.

24. Again, in the event he was mistaken J.M. asked United for evidence that when it evaluated analogous medical or surgical care it relied on internal policies rather than the insurance contract to approve or deny care.

25. He asked United to perform a MHPAEA compliance analysis and asked to be provided with physical copies of the results of this analysis. He also asked for specific information concerning the development and implementation of United's flagged facility protocol.

26. In the event the denial was upheld, J.M. asked to be provided with a copy of all documents under which the Plan was operated, including all governing plan documents, the summary plan description, any insurance policies in place for the benefits he was seeking, any administrative service agreements that existed, any clinical guidelines or medical necessity criteria utilized in the determination (along with their medical or surgical equivalents, whether or not these were used to evaluate the claim), together with any reports or opinions regarding the claim from any physician or other professional, along with their names, qualifications, and denial rates (collectively the "Plan Documents").

27. In a letter dated January 28, 2022, signed by Patricia S. Allen, coding quality analyst, United partially overturned the denial of payment for N.M.'s treatment. The letter stated

that the denied dates would be maintained because the "rendering provider is an Intern" and the "service billed is considered outside of the providers [sic] scope of licensure."

28. The letter falsely claimed to be the final adverse determination in the appeal process. It also continued to incorrectly list the service type as "Substance Use Disorder Services."

29. The letter further stated that:

> The purpose of this letter is to inform you that, based on my review of the available information I have determined that coverage is available under your benefit plan for your admission to EVA CARLSTON ACADEMY for dates of service 07/06/2021 through 12/15/2021 and that coverage is not available for 07/02/2021 through 12/13/2021.

30. In a February 18, 2022, "Corrected Letter" United reversed its decision to partially award benefits. The letter stated in relevant part:

> The Program and Network Integrity (PNI) coding review had a decision of a partial overturn on the original claim denial. However, no authorization was neither sought nor obtained [sic] from Optum as required by your TriNet Group, Inc. Per the TriNet Group Number 905050 Certificate of Coverage, Section – Your Responsibilities page 3, Obtain Prior Authorizations; "Some Covered Health Care Services require prior authorization. Physicians and other health care professionals who participate in a Network are responsible for obtaining prior authorization. However, if you choose to receive Covered Health Care Services from an out-of-Network provider, you are responsible for obtaining prior authorization before you receive the services."

31. On March 17, 2022, J.M. submitted a level two appeal of the denial of payment of N.M.'s treatment. J.M. continued to argue that N.M.'s treatment was a covered benefit under the terms of the Plan. He contended that United had failed to respect his rights under ERISA and had falsely alleged that he had exhausted his appeal rights.

32. J.M. wrote that he had made multiple attempts to contact United to determine why it had approved some dates and rejected others.[1] He was eventually told that United had

---

[1] J.M.'s contact was done through a representative.

overruled the decision to approve payment because the services were billed outside of the scope of ECA's license.

33. J.M. expressed doubt that he had received the full, fair, and thorough review to which he was entitled. He wrote that it was apparent from the denials that United continued to evaluate ECA as a substance abuse treatment facility.

34. J.M. wrote that he was troubled that United could ostensibly conduct an entire review without realizing that it was using substance use criteria to evaluate the medical necessity of mental health services.

35. J.M. reiterated the arguments that he had made in his initial appeal and argued that United had ignored the arguments and evidence he provided in the appeal process, including his contention that the denial violated MHPAEA. He claimed that United had an obligation to engage in a meaningful dialogue but had failed to do so.

36. J.M. acknowledged that some of the therapy notes for N.M.'s treatment were signed by an intern as United had alleged. However, he pointed out that these notes were also signed by a clinical director and often by another licensed clinician as well. He wrote that ECA provided appropriate treatment in accordance with their licensure as well as Utah state law.

37. He pointed out that United had a fiduciary duty to act in his best interest and that the surface level review he had received from Patricia Allen, a coding analyst, did not satisfy United's obligations. He asked United to correct these errors in the future.

38. J.M. contended that the real reason United had refused to pay for treatment was that United had flagged ECA for automatic denial. He pointed out that the Program and Network Integrity program had authorized payment but had been overridden by United.

39. He asked United to provide specific information concerning the denial of payment, namely:

>1. Copies of the criteria used in this adverse determination.
>
>2. United's flagged facility policy/guidelines.
>
>3. All information as to why such a decision was made.
>
>4. All notes, logs, activity, and notes regarding your review by Patricia S. Allen and anyone else who has handled my file.
>
>5. Copies of all provider profiles regarding any/all other out-of-network residential treatment center providers and in-network residential treatment center providers that have been flagged.
>
>6. Copies of all medical/surgical analogue facility flagging policies/guidelines showing equal restrictions for out-of-network and in-network providers that are licensed according to their respective state regulations and acting within the scope of their license.
>
>7. Copies of any/all flagging procedure meeting minutes, notes, committee(s) notes, emails, letters, memorandums, and any other relevant documents from between October 2017, through March 2022. Specifically, any and all that have occurred after the court ruling of the David Wit et al., v. United Behavioral Health (Wit v. United) case.
>
>8. Copies of all utilization review phone logs, denial review notes, discussions, etc., regarding the about face on the payment promise in your January 28, 2022, denial letter.
>
>9. Copies of the Program and Network Integrity (PNI) coding review, which overturned some of the dates of service, however, United chose to override that overturn and deny anyway.
>
>10. An explanation for why he was never notified of this revocation of approval for payment by United until Eva Carlston's utilization review representative called United repeatedly to obtain authorization numbers for the approved dates.
>
>11. The MHPAEA information he had requested in both his level one appeal and in his level two appeal letter.

40. J.M. argued that United's argument that prior authorization had not been attempted was false and that United's sole justification for denial appeared to be based on ECA being blacklisted.

41. J.M. again asked for a copy of the Plan Documents. However, United did not provide him with a copy of these or any of the other documentation he had requested.

42. In a letter dated April 11, 2022, United upheld the denial of payment for N.M.'s treatment. The letter again erroneously referred to the service type provided as "Substance Use Disorder Services." The letter stated in pertinent part:

    > Based on my review of the request, including any supporting documentation which may have been submitted with your appeal letter, I have determined that the submitted claim(s) for date(s) of service 07/21/2021 through 12/15/2021 has not been approved for additional payment. This service was billed outside the scope of the healthcare provider's license. No further payment will be issued.
    >
    > The purpose of this letter is to inform you that based on my review of the available information: I have determined that benefit coverage Is not available for your admission to Eva Carlston Academy for the following date(s) of service: 07/02/2021 through 12/15/2021.

43. As his attempts to get the documents had been continually ignored, J.M. made one last attempt to request these materials by sending a letter dated June 16, 2022, to both United and the Plan Admin. In particular he asked to be provided with:

    - Disclosure of the identities of all individuals with clinical or medical expertise who evaluated the treatment for my daughter, [N.M.], at Eva Carlston, copies of those individuals' *curriculum vitae*, copies of any memoranda, emails, reports, or other documents reflecting the rationale of the reviewers in denying coverage for [N.M.]'s claim;
    - A complete copy of both the medical necessity criteria utilized by United in determining that [N.M.]'s treatment was not medically necessary and that treatment for [N.M.] at a lower level of care was appropriate;
    - A complete copy of the medical necessity criteria utilized by the Plan for skilled nursing facilities, sub-acute inpatient rehabilitation treatment, and inpatient hospice treatment.  This is necessary to allow me to carry out an evaluation of whether the Plan has complied with the requirements of the federal Mental Health Parity and Addiction Equity Act;

- Complete copies of any and all internal records compiled by United and TriNet in connection with [N.M.]'s claim including, but not limited to, telephone logs, memoranda, notes, emails, correspondence, or any other communications;
- A copy of the summary plan description, master plan document, certificate of insurance, insurance policy, and any other document under which [N.M.]'s insurance plan is operated;
- Copies of any and all administrative service agreements, contracts or other documents which described and defined the relationship, rights and obligations of and between you, the plan administrator, and United; and
- Copies of any and all documents outlining the level of accreditation required for residential treatment programs, and any licensure requirements;
- Copies of any and all documents showing whether analogous levels of care to residential treatment programs also require these levels of accreditation; and
- Copies of documents identifying the processes, strategies, evidentiary standards, and other factors used to apply a nonquantitative treatment limitation with respect to medical/surgical benefits and mental health or substance use disorder benefits under the plan.

44. The Plaintiff exhausted his pre-litigation appeal obligations under the terms of the Plan and ERISA.

45. The denial of benefits for N.M.'s treatment was a breach of contract and caused J.M. to incur medical expenses that should have been paid by the Plan in an amount totaling over $100,000.

## FIRST CAUSE OF ACTION

**(Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))**

46. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as United, acting as agent of the Plan, to discharge its duties in respect to claims processing solely in the interests of the participants and beneficiaries of the Plan. 29 U.S.C. §1104(a)(1).

47. United and the Plan failed to provide coverage for N.M.'s treatment in violation of the express terms of the Plan, which promise benefits to employees and their dependents for

medically necessary treatment of mental health and substance use disorders.

48. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

49. The denial letters produced by United do little to elucidate whether United conducted a meaningful analysis of the plaintiff's appeals or whether it provided him with the "full and fair review" to which he is entitled. United failed to substantively respond to the issues presented in J.M.'s appeals and did not meaningfully address the arguments or concerns that the Plaintiff raised during the appeals process.

50. In fact, United's denial letters rely on formulaic recitations and do not address the arguments raised by J.M. in any meaningful capacity.

51. United and the agents of the Plan breached their fiduciary duties to N.M. when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in N.M.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of N.M.'s claims.

52. The actions of United and the Plan in failing to pay for N.M.'s medically necessary treatment are a violation of the terms of the Plan and its facility eligibility criteria.

53. While the presentation of alternative or potentially inconsistent claims in the manner that Plaintiffs state in their first, second, and third causes of action is specifically anticipated and allowed under F.R.Civ.P. 8, Plaintiffs contend they are entitled to relief and appropriate remedies under each cause of action.

**SECOND CAUSE OF ACTION**

**(Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3))**

54. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA. The obligation to comply with both ERISA and MHPAEA is part of United's fiduciary duties.

55. MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

56. MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

57. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity; refusal to pay for higher-cost treatment until it can be shown that a lower-cost treatment is not effective; and restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A), (F), and (H).

58. The facility eligibility criteria used by United for the intermediate level mental health treatment benefits at issue in this case are more stringent or restrictive than the facility

eligibility criteria the Plan applies to analogous intermediate levels of medical or surgical benefits.

59. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for N.M.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities.

60. When United and the Plan receive claims for intermediate level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice.

61. United and the Plan evaluated N.M.'s mental health claims using facility eligibility criteria that deviate from generally accepted standards of medical practice including the licensure status of the facility.

62. This process resulted in a disparity because the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

63. United's flagged facility list is a violation of MHPAEA as it imposes requirements on providers of mental health and substance use disorder treatment beyond those listed in the insurance contract and results in a denial of payment regardless of the medical necessity of treatment and the licensure of the facility.

64. On information and belief, United does not restrict the availability of medical or surgical care in this manner.

65. Plaintiff's insurance plan documents specifically state that they supersede any other policies or protocols, however United ignored this provision. On information and belief,

United does not do so when evaluating the necessity of analogous medical or surgical care.

66. In this manner, the Defendants violate 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the medical necessity criteria utilized by the Plan and United, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

67. United and the Plan did not produce the documents the Plaintiff requested to evaluate medical necessity and MHPAEA compliance, nor did they address in any substantive capacity the Plaintiff's allegations that United and the Plan were not in compliance with MHPAEA.

68. In fact, despite J.M.'s request that United and the Plan conduct a parity compliance analysis and despite the direction from the Department of Labor that ERISA plan and claim administrators perform parity compliance analyses, United and the Plan have not provided J.M. with any information about whether they have carried out any parity compliance analysis and, to the extent that any such analysis was performed, United and the Plan have not provided J.M. with any information about the results of this analysis.

69. The violations of MHPAEA by United and the Plan are breaches of fiduciary duty and also give the Plaintiff the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

(a) A declaration that the actions of the Defendants violate MHPAEA;

(b) An injunction ordering the Defendants to cease violating MHPAEA and requiring compliance with the statute;

(c) An order requiring the reformation of the terms of the Plan and the facility eligibility criteria utilized by the Defendants to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

(d) An order requiring disgorgement of funds obtained by or retained by the Defendants as a result of their violations of MHPAEA;

(e) An order requiring an accounting by the Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of the Defendants' violations of MHPAEA;

(f) An order based on the equitable remedy of surcharge requiring the Defendants to provide payment to the Plaintiff as make-whole relief for his loss;

(g) An order equitably estopping the Defendants from denying the Plaintiff's claims in violation of MHPAEA; and

(h) An order providing restitution from the Defendants to the Plaintiff for his loss arising out of the Defendants' violation of MHPAEA.

**THIRD CAUSE OF ACTION**

**(Request for Statutory Penalties Under 29 U.S.C. §1132(a)(1)(A) and (c))**

70. United, acting as agent for the Plan Admin, is obligated to provide to participants and beneficiaries of the Plan within 30 days after request, documents under which the Plan was established or operated, including but not limited to any administrative service agreements between the Plan and United, the medical necessity criteria for mental health

and substance abuse and medical necessity criteria for skilled nursing and rehabilitation facilities.

71. In spite of J.M.'s requests during the appeal process for United to produce the documents under which the Plan was operated, and his requests that it forward that request to the appropriate entity if United was not acting on behalf of the Plan Admin, United repeatedly failed to produce to the Plaintiff the documents under which the Plan was operated, including but not limited to any administrative service agreements between the Plan and United, the medical necessity criteria for mental health and substance abuse and medical necessity criteria for skilled nursing and rehabilitation facility treatment within 30 days after they had been requested.

72. After United repeatedly failed to provide these materials, J.M. sent one final letter dated June 16, 2022, to both United and the Plan Admin again requesting the documents which he was statutorily entitled to receive upon request. United and the Plan Admin did not comply with J.M.'s request for documents.

73. The failure of the Plan Admin and its agent United, to produce the documents under which the Plan was operated, as requested by the Plaintiff, within 30 days of J.M.'s request for ERISA documents, provides the factual and legal basis under 29 U.S.C. §1132(a)(1)(A) and (c) for this Court to impose statutory penalties up to $110 per day on the Plan Admin from 30 days from the date of each of these letters to the date of the production of the requested documents.

74. In addition, Plaintiff is entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g).

//

WHEREFORE, the Plaintiff seeks relief as follows:

1. Judgment in the total amount that is owed for N.M.'s medically necessary treatment at ECA under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

2. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiff's Second Cause of Action;

3. For an award of statutory penalties of up to $110 a day against the Plan Admin after the first 30 days for each instance of the Plan Admin and its agent United's failure or refusal to provide the Plaintiff with the documents he had requested.

4. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

5. For such further relief as the Court deems just and proper.

DATED this 12th day of July, 2023.

By    s/ Brian S. King
      Brian S. King
      Attorney for Plaintiff

County of Plaintiff's Residence:
Tarrant County, Texas.